In the Matter of the Application of' ————— TAYLOR, Petitioner, for a Certiorari Order against WILLIAM E. WALSH and Others, Constituting the Board of Standards and Appeals of the City of New York, Respondents, and Others, Defendants.

Supreme Court, New York County, April 4, 1926.

*Robert H. Koehler*, for the petitioner.

*Beardsley, Hemmens & Taylor*, for the defendant New York Edison Company.

*George P. Nicholson, Corporation Counsel*, for the respondent Walsh and others.

DELEHANTY, J. This is an application by plaintiff for a certiorari order under section 719-a of the Greater New York Charter (as

added by Laws of 1916, chap. 503, § 6, and amd. by New York Local Laws of 1925, No. 13) to review a determination of the board of appeals in case No. 116–24–BZ made pursuant to section 21 of article 5 of the Building Zone Resolution, permitting a variation in the application of the use district regulations of the Building Zone Resolution and authorizing the New York Edison Company to erect and maintain a building to be occupied as an electric transformer distributing station upon the premises No. 27 West Forty-seventh street and Nos. 32–34 West Forty-eighth street, Manhattan, New York city, on the ground that " owing to requirements of the neighborhood for power, there would be undue hardship in preventing the applicant from erecting the proposed structure," which determination was made by said board of appeals by resolution adopted April 29, 1924, on the application of the New York Edison Company, and after a hearing upon notice. Prior thereto and on August 8, 1923, the New York Edison Company filed plans with the bureau of buildings, which were duly approved on September 18, 1923, for the erection of a transformer distributing station and store show-room. After the granting of the permit by the superintendent of buildings certain objecting property owners, including the plaintiff, appealed to the board of appeals, and on or about December 18, 1923, the board determined that a " transformer station is a non-conforming use under the provisions of section 4 of the Building Zone Resolution in a business district, being a distributing centre of electric power for the particular portion of the community which it serves." Thereafter, on or about January 9, 1924, the New York Edison Company made application to the superintendent of buildings for the approval of an amendment to the application previously filed, known as No. 145, 1923. Such application on January 17, 1924, was disapproved on the grounds, " Proposed occupancy for this building is contrary to provision of section 4 of the Building Zone Resolution (see resolution of board of appeals, dated December 18, 1923)," being the resolution which theretofore revoked the said permit of the superintendent of buildings for the erection and occupancy of the proposed station. No appeal seems to have been taken by the New York Edison Company from the resolution of the board of appeals revoking the permit of the superintendent of buildings. On or about January 25, 1924, the New York Edison Company made application to the board of appeals for a variation from the requirements of the Building Zone Resolution to permit the erection of an electric transforming or distributing station building. On April 29, 1924, the board of appeals adopted the resolution heretofore mentioned, which the plaintiff seeks to review on this application.

The premises in question are owned by the New York Edison Company and run through the block two hundred and ten feet in depth between Forty-eighth and Forty-ninth streets with a frontage of twenty-three feet ten and one-half inches on West Forty-seventh street and forty-one feet on West Forty-eighth street, being known as Nos. 27 West Forty-seventh street and 32–34 West Forty-eighth street, Manhattan, city of New York. They were purchased by the New York Edison Company, a public service corporation engaged in the manufacture and distribution of electric current, for the purpose of erecting thereon a transformer or distributing station. The New York Edison Company manufactures high-tension alternating current at central power plants, which high-tension current is carried through underground cables or feeders to the company's transforming, distributing and storage battery stations, of which there are a large number in the city of New York, located at various points in the boroughs of Manhattan and the Bronx. Six of these substations have been erected since the Building Zone Resolution became effective. The streets where the proposed building was to be located are in a business district according to the use district map accompanying the zoning resolution adopted July 25, 1916. It is evident from the record that it had become necessary to erect and maintain a new transforming distributing station in the neighborhood where the New York Edison Company desired to locate their new station, owing to the increased demands for electric current in that neighborhood. In these substations the high-tension alternating current is transformed and reduced to low-tension direct current which is then distributed through its underground network of wires and cables to the consumers of electric current in the zone supplied by each particular distribution station. No electricity is generated at these substations. Without these substations the New York Edison Company could not fulfill its franchise obligation of proper service to the public. The company's method of distributing electric current requires that each distributing station be located in approximately the load center of the district supplied in order to permit a proper regulation of pressure of current supplied to consumers. The location must be at such specific points as will permit and secure the maintenance of an even, or as near as possible to even, voltage upon the entire distributing system. There is a certain radius from each station beyond which current cannot be supplied without undue waste, inefficiency and loss of uniformity and pressure and voltage, so that new transformer stations become necessary when the demand upon the existing stations become such in distance and amount that they are no longer adequate to supply the needs

of the public in the particular locality. The locality of the building in question is in the approximate load center of the district to be supplied. Part of the expense for the erection of the station had been incurred prior to the hearing before the board of appeals upon the faith of the permit granted by the superintendent of buildings. The estimated cost of such building was some $1,900,000. The use to which the building was to be put would in no way create a nuisance. The specific objection to the erection and use of such building is that it was prohibited under the Building Zone Resolution on the ground that it was to be and would be used when completed as an " electric central station power plant."

The record in the first proceeding, known as No. 1123–23–A, is made a part of the return in this proceeding. After a careful consideration of the record before me I am of opinion that the decision of the superintendent of buildings granting the permit for the erection and maintenance of the substation in question was correct, and that the decision by the board of appeals reversing such determination and revoking the permit so granted was error. The station sought to be erected on the premises on West Forty-seventh and Forty-eighth streets was not an " electric central station power plant " as contemplated by the Building Zone Resolution. This station was to be used as a transformer and/or distributing station, a substation for transforming high-tension current to low-tension current for distribution to the consumers served by that station. The resolution of the board of appeals terms the building " an electric transforming station." A " central station " is a term used to designate a plant at which electric current is generated to supply consumers. (New Internat. Ency. p. 599.) These substations do not generate electricity. A central station is distinct and different from the substations used for transforming local direct current for distribution. (New Internat. Ency. p. 609.) The " electric central station power plants " contemplated by the building zoning resolution were the chief or central stations in which coal or other material is burned for the generating of current, and at which stations there are necessarily involved excessive vibration and the emitting of smoke and cinders, making their presence undesirable in business districts because of certain nuisance features. The chief or " electric central station power plants " of the New York Edison Company appear to be erected on the waterfront or apart from points where they would cause annoyance. That there is a difference between the chief or " electric central station power plants " and sub-transforming or distributing stations is beyond question.

The record shows that the department of water supply, gas and electricity of the city of New York uses three terms in describing

electric plants: (1) " A central power or generating plant, by which is meant a plant where power is originally generated; (2) subpower house plant, in which the power is transformed by a mechanical apparatus from an alternating current into a direct current, or *vice versa;* (3) private plants, which means the power plants in any building which generate electricity for the use, exclusively, in such building." Such being the fact, it must be presumed that the building zoning resolution was passed in view of such distinctions made as to the plants, stations or use to which they were to be put in the generating and distribution of electricity in New York city, and that, when the Building Zone Resolution stated that an " electric central station power plant " is excluded or prohibited from being erected in a business district, it meant exactly what it said, the chief or " electric central station power plant," and not the substations for the transforming or distribution of the electricity generated in the chief or " electric central station power plant." If this were not so, there would have been no reason or purpose for especially designating the prohibition as to " electric central station power plants." The Building Zone Resolution (Art. 2, § 4) is explicit as to what buildings may be used for and for what uses buildings may be erected in a business district. It provides: (a) " In a business district no building or premises shall be used, and no building shall be erected which is arranged, intended or designed to be used, for any of the following specified trades, industries or uses: * * * (12) Electric central station power plant. * * * (b) In a business district no building or premises shall be used, and no building shall be erected, which is arranged, intended or designed to be used for any trade, industry or use that is noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise; but car barns or places of amusement shall not be excluded. (c) In a business district no building or premises shall be used, and no building shall be erected, which is arranged, intended or designed to be used for any kind of manufacturing," except in certain cases which do not apply to the building in controversy. As in my opinion the substation sought to be erected was not an " electric central station power plant," as contemplated by the Building Zone Resolution, and as the use to which the said building was to be put would not be noxious or offensive through the emission of odor, dust, smoke, gas or noise, and as it was not to be used for manufacturing purposes, I must determine that the New York Edison Company was entitled to erect the proposed substation without any permit or authority from the board of appeals. In view of such determination, there was no basis for the application for a variance of the use of the district regulations in regard to the building in question,

as its erection and maintenance for the purposes contemplated were not prohibited by law.

The petition on the certiorari proceeding must, therefore, be dismissed, with costs, with leave to the New York Edison Company to take such further proceeding as it may be advised. Settle order on notice.